## Carr & Co. *versus* Beck *et al.*, Garnishees.

1. Palmer sold land by articles to Given, who agreed to pay part of the purchase-money to a creditor of Palmer. Given sold the land to Carr, who agreed to pay to Palmer's creditor the amount which Given had bound himself to pay. Palmer, with a knowledge of the whole agreement, conveyed the land directly to Carr, and Carr failed to pay Palmer's debt. *Held*, that Given still remained debtor to Palmer for the unpaid purchase-money.

2. When Carr purchased there was a lien on the land against Given, which Carr paid. *Held*, that this was not to be used to reduce the unpaid purchase-money due by Given with which he had agreed to pay Palmer's debt, and which Carr had agreed to pay out of the purchase-money due by him to Given.

3. In a contest between Palmer and an attaching-creditor of Given, Carr was a good witness for Palmer to prove that he (Carr) had not paid the unpaid purchase-money according to his agreement with Given.

4. Palmer bought land in Missouri from Given, and agreed to pay a debt due on it. At the trial, Palmer had in his possession, and produced, a note given by Given in Missouri, with receipts for payment in full endorsed on it. The court below received this in evidence in connection with evidence of settlement between Given and Palmer. *Held*, that the note was a circumstance to go to the jury, and its admission was not cause for reversal.

ERROR to the Court of Common Pleas of *Cambria county*, where this was an attachment execution by William Carr & Co. against John G. Given, in which Andrew Beck, James M. Palmer and William Palmer were garnishees. Beck and J. M. Palmer, with W. Palmer as their surety, were indebted to Given on a joint and several bond for $800, secured by mortgage, which was

[Carr *v.* Beck.]

attached on the above process, July 26th 1859, together with all other moneys due the defendant from the garnishees.

It appeared, also, that Beck and J. M. Palmer owed a note to Given for $215, due July 28th 1859; the contest, however, was mainly upon the bond.

The garnishees set up a defence arising from an indebtedness of Given to W. Palmer, as follows:—

On May 12th 1857, Given gave to W. Palmer a tract of land in Missouri, in exchange for the "Welsh tract," owned by Palmer, in Cambria county; Palmer to pay a balance of purchase-money due on the Missouri tract, and Given to pay a like amount of judgments which Palmer owed to Lloyd & Co., and which were first liens on the "Welsh tract." Palmer paid the debt on the Missouri land, but Given neglected to pay Lloyd & Co. On March 28th 1859, Given, in a settlement, was found to be in debt to Palmer $740; on the same day Given, by articles of agreement, sold the "Welsh tract" to W. K. Carr for $1080, of which $740 was to be paid by W. K. Carr to Lloyd & Co., on account of their judgments against Palmer. The deed for the tract was made directly from Palmer to W. K. Carr, September 2d 1859, in pursuance of a stipulation in the agreement between W. K. Carr and Given. Lloyd & Co. having revived their judgments against Palmer, with notice to W. K. Carr as terre-tenant, execution was issued; but Carr obtained a rule on Lloyds to exhaust the other land of Palmer before proceeding to the "Welsh tract." At the time of the sale to Carr, there was a lien on the tract against Given in favour of Whiting for $374.96, on which the tract was sold by the sheriff to Carr for $10, Carr having previous to the sale agreed to purchase this judgment, which was transferred to him after the sale. On the trial it was claimed to reduce the $740 due from Given to Palmer by this judgment of Whiting's, which would have left about $500 due from Palmer to Given, and liable to the plaintiff's attachment.

W. K. Carr was called by garnishees as a witness, and admitted by the court against plaintiff's objection to him on the ground of interest. The garnishees also offered in evidence a note in their possession, dated in Missouri, from Given to Tutton Turner, or order, for $660, with interest, on which were endorsed receipts for payment in full.

The plaintiffs submitted a point as follows:—

That the garnishees not having shown that they have paid the mortgage-bond for $800, due the defendant Given on the 1st February 1860, but set up as a defence the failure of Given, or William K. Carr for him, to pay the $740, according to the agreement with Given of the 28th March 1859; and as William K. Carr bought in the title on the Whiting judgment, no more can be deducted from the $740 or the $800 than Carr was required to

[Carr *v.* Beck.]

pay (the amount of the judgment with interest and costs at the time of the sheriff's sale) ; and as there would still be a sufficient amount in the hands of the garnishees to pay the attaching-creditor, the plaintiffs are entitled to judgment, the execution of which to be restrained until it is ascertained whether Carr can be compelled to pay the balance of the $740, according to the terms of his agreement with the defendant Given of the 28th March 1859.

Which was refused.

The court (Taylor, P. J.), after stating the facts, charged the jury :—

" The question is whether on the 25th July 1859, when the attachments were served, Palmer was indebted in law and equity, to pay Given the money attached. If so, the plaintiffs had a right to attach and appropriate it in payment of Given's debt to them. If not—if Given could not have claimed the fund from Palmer at the time the attachments were served—then the plaintiffs cannot recover.

" Now, if, at a settlement between Given and Palmer in March 1859, Given was indebted to Palmer $740, which William K. Carr undertook to pay to Lloyd & Co. for the benefit of Palmer and failed to do it, leaving Palmer personally liable still to Lloyd & Co. and his property liable, then there was nothing due from Palmer to Given at the time the attachments were served, or in the hands of Palmer belonging to Given, liable to attachment. This is the allegation of the defendants in these several cases. You will decide the question and determine these issues accordingly."

The verdict was for the garnishees.

The plaintiffs having excepted to the admission of W. K. Carr as a witness and of the note of Turner in evidence, also the answer .to the plaintiffs' point and the charge to the jury, assigned these for error.

*George M. Reade* and *William Kittell*, for plaintiffs in error.— A conditional verdict would have placed Given's creditors in the same situation as himself, and would have done no injury to the garnishees: Campbell, Bredin & Co.'s Appeal, 8 Casey 92. Given set apart $740 out of the price of the land to be paid for the benefit of Palmer, and Palmer conveyed the land. Palmer should not now be permitted to repudiate the arrangement: Kase *v.* Kase, 10 Casey 128. A garnishee cannot make all the defences he could against his creditor: Newlin *v.* Scott, 2 Id. 104 ; King, Brown & Co. *v.* Hyatt, 5 Wright 229 ; Lancaster Bank *v.* Stouffer, 10 Barr 398. After the attachments were laid, Given's right to pursue his debtors was displaced in favour of the attaching-creditors : Sweeny *v.* Allen, 1 Barr 380 ; Maynard *v.* Neckervis,

[*Carr v. Beck.*]

9 Id. 81; Paxton *v.* Sanderson, 8 Leg. Int. 54; Daly *v.* Derringer, 9 Id. 46; Baldwin's Estate, 4 Barr 248.

On Given's agreement with W. K. Carr, Lloyd could have maintained an action for the $740 in Given's name against Carr: Campbell *v.* Shrum, 3 Watts 60; Blank *v.* German, 5 W. & S. 36; Beers *v.* Robinson, 9 Barr 230; Vincent *v.* Watson, 6 Harris 96; Bellas *v.* Fagely, 7 Id. 276; Woodward's Appeal, 2 Wright 327; Campbell *v.* Lacock, 4 Id. 448.

But if the consideration to Carr failed to the extent of Whiting's judgment, Carr still remains liable for the balance of the purchase-money: McGinnis *v.* Noble, 7 W. & S. 454; Renshaw *v.* Gans, 7 Barr 117; Stehley *v.* Irwine, 8 Id. 500; Garrard *v.* Lantz, 2 Jones 186.

To the rule that the garnishees may plead anything against the attachment which they could against the original debtor, there are important exceptions, among which are: that the debt is not presently demandable: Farmers' and Mechanics'. Bank *v.* Little, 8 W. & S. 219; debts due *in presenti*, but payable *in futuro*, and upon a contingency, may be attached; the garnishees may be served with an attachment before they are in *default:* Fulweiler *v.* Hughes, 5 Harris 447; Kieffer *v.* Ehler, 6 Id. 388; and funds which came into the hands of the garnishee *three years* after the attachment was served, were held to be bound by the writ: Silverwood *v.* Bellas, 8 Watts 421; Gochenaur's Executors *v.* Hostetter, 6 Harris 418.

The court charged if Carr failed to pay the $740, Given continued liable to Palmer, and therefore there was nothing due from Palmer to Given; which is incorrect, as it would not cover all the claim. This was a material misdirection, which is error although no instruction was asked: Garret *v.* Gonter, 6 Wright 143; Seigle *v.* Louderbaugh, 5 Barr 490; Brown *v.* Clark, 2 Harris 475. The court should have brought all the facts to the notice of the jury: Neiman *v.* Ward, 1 W. & S. 58; Barker *v.* Donaldson, 6 Id. 142; Relf *v.* Rapp, 3 Id. 21; Keeler *v.* Vantuyle, 6 Barr 250.

The note for $215 was not shown to have been paid or negotiated, the presumption was that it was unpaid and therefore liable to the attachment: Fessler *v.* Ellis, 4 Wright 218. This question should not have been submitted without evidence: Lower & Barron *v.* Clement, 1 Casey 63. W. K. Carr as terre-tenant was called by his own oath to discharge his land and throw it on his vendor: Kuestor *v.* Keck, 8 W. & S. 16; Jones *v.* Shawhan, 4 Id. 257; Long *v.* Long, 1 Watts 270; McNeill *v.* Connell, 7 Barr 370. He was a privy in estate: Miller *v.* Frazier, 3 Watts 456; Griffin *v.* Griffin, 7 Harris 177.

There was nothing but the possession of the Turner note which showed Palmer had paid it.

[Carr *v.* Beck.]

*R. L. Johnston*, for defendants in error.—The whole question was, whether there was anything in the hands of the garnishees due defendant ; the facts were submitted to the jury, who found that the garnishees did not owe Given anything. The cases cited are inapplicable. The specifications relate exclusively to the arrangement between Given and W. K. Carr. The questions were of fact, not of law. W. K. Carr was without interest. He is still liable to pay the balance of what he agreed to pay. The presumptions as to the negotiable note are the reverse of those asserted by plaintiffs in error.

The opinion of the court was delivered, January 8th 1856, by

AGNEW, J.—John G. Given, the defendant in the judgment of Carr & Co., held a bond and mortgage of $800, given to him in the purchase of property by Andrew Beck and James M. Palmer, with William Palmer as their surety, which were attached on the 26th of July 1859.

The bond being several as well as joint, William Palmer set up as a defence, that at the time of the service of the attachment Given was indebted to him upon an exchange of land as follows : In 1857 Palmer exchanged with Given a tract of land in Cambria county, called the Welsh tract, for lands in Missouri owned by Given, agreeing to pay a balance of purchase-money owed by Given upon it, and Given agreeing to pay an equal amount to judgments of Lloyd & Co. against Palmer, which were liens on the Welsh tract. Palmer paid the debt in Missouri, but Given failed to pay this amount to Lloyd & Co. On the 28th of March 1859 Palmer and Given settled, and the latter fell in debt to the former $740. Given, in order to pay this sum, sold the Welsh tract to William K. Carr, and bound him in the articles to pay that sum to Lloyd & Co.'s judgment against Palmer; Given agreeing to have the title to Carr made by Palmer in sixty days. Carr not having paid this sum of $740 to Lloyd & Co.'s judgment, it is clear that when the attachment was served on William Palmer, on the 26th of July 1859, he stood as the creditor of John G. Given in that sum. It is argued, however, that because Palmer, on the 9th of September 1859, conveyed the Welsh tract to Carr, he is to be presumed to have assented to the payment stipulated by Carr to be made to Lloyd & Co., and therefore Given's debt to Palmer is suspended until the insolvency of Carr is shown. I do not find this deed in the evidence, but admitting it, the inference drawn is incorrect.

Given owed Palmer the $740, and by his own contract was to have paid the money to Lloyd & Co.'s judgment in relief of the Welsh tract. On the day of his settlement with Palmer, he manifestly sold to Carr, in order to raise the means of payment. Carr's covenant was to Given, not to Palmer, and at least made

1 P. F. SMITH—18

[Carr *v.* Beck.]

him liable to the former and not to the latter. Palmer's contract was to convey the Welsh tract to Given. Now it may be entirely true that Palmer was willing to comply with his covenant to Given by making the deed over to Carr, but it does not follow that he thereby released Given, his only debtor. He took no obligation in any form from Carr, and gave no release except to Given, while if Carr even did agree to pay directly to Palmer, he violated his assumption by taking a rule in the Lloyd & Co. cases to prevent them from selling the Welsh tract under their liens until they had exhausted all the other property of Palmer, thus throwing the payment from his own shoulders upon those of Palmer. Clearly, then, while Given had tried to provide means for the payment of his debt to Palmer, he had not paid it, and Palmer had done nothing to release him. But another ground is set up as a partial defence. It seems that at the time of the sale to Carr, there was a judgment against Given in favour of Nathan Whiting *et al.*, a lien on the premises sold. This judgment was levied on the Welsh tract, which was bought in at sheriff's sale by William K. Carr, on the 6th day of June 1860, for $10. Carr in the mean time, however, had arranged with Whiting's attorney for the purchase of the judgment, and it was accordingly transferred to him on the record on the 17th September 1860. Carr, on the trial, claimed to reduce the debt of $740, from Given to Palmer, by the amount of the Whiting judgment. But this is manifestly incorrect. Had the judgment been against Palmer instead of Given, it would then have been a defence between Given and Palmer, but being against Given, while it would be a defence to Carr in a suit by Given for the purchase-money, it was not a liability for which Palmer was answerable to Given. Given therefore could not set it up against Palmer. And even had Palmer conveyed to Carr with warranty of title, however liable he might be in the covenant to Carr, Given could not set off his own debt to Whiting against his debt to Palmer.

The error of the argument consists in converting Carr's defence to Given's claim, into a defence by Given against the claim of Palmer. The claim on the note of $215.50, at five months, now set up, is an after-thought, and cannot be permitted to disturb the judgment.

The plaintiff in the attachment gave in evidence no other debt to the defendant by the garnishee than the bond of $800 and mortgage. The article of agreement between Given and Beck and James M. Palmer, and Given's receipt for the note of $215.50 at five months, payable at the office of W. M. Lloyd & Co., were given in evidence by the garnishees in explanation of the transactions of Given. But no note of $215.50 was produced or accounted for, or shown to belong to Given at the time of the attachment. The strong presumption is from the place of payment that the note was at once transferred to Lloyd & Co. upon

[Carr v. Beck.]

the claim, while in the trial no claim appears to have been made upon it. It is not alluded to in the plaintiffs' points in the charge of the court, or in the assignment of errors. The only question raised on the trial, so far as the record shows, appears to have referred to the claim of $800 on the bond, and the set-off to it of $740. The court in their charge say it is true that if William K. Carr failed to pay the $740, leaving Palmer still liable to Lloyd & Co., then there was nothing due from Palmer to Given, or in the hands of Palmer belonging to Given liable to attachment. But this has manifest reference to the $800 bond debt, which was alone before the mind of the judge, and it would be doing great injustice to him to apply it now to the $215.50 note, of which the plaintiff had given no evidence, and on which they then set up no claim. It is now too late to ask us to remedy the omission.

There was no error in the admission of William K. Carr as a witness for Palmer. He had no interest in the controversy between Given and Palmer. The fact of his subsequent purchase of the land and agreement to pay the $740 created no interest on Palmer's side. The effect of his testimony was to fix the debt upon Given and thereby to make his covenant to pay it to Lloyd & Co. more effectual. If he had any sensible interest it was against Palmer. Nor did the throwing of that debt upon Given discharge the land Carr had purchased, from Lloyd & Co.'s judgments. Lloyd & Co. are not affected by the controversy between Given and Palmer, no matter which wins. Palmer's debt to Lloyd & Co. must be paid, and stands as an encumbrance on his land. If fixing the debt of $740 on Given could change Lloyd & Co.'s relation to the case and discharge the lien of their judgment, then Carr would have an interest; but as he stands related to the case, having assumed to Given to pay this debt to Lloyd & Co., his testimony in favour of Palmer establishing the debt, certainly is unfavourable to his own discharge from his covenant to pay it to Lloyd & Co.

Nor was there any error in receiving in evidence Given's note of $660, given at Glasgow, Missouri, September 18th 1856, payable January 1st 1858, with the receipts for payment endorsed. It had been preceded by the testimony of the settlement on the 28th March 1859, and the balance of $740 found due by Given to Palmer, the witness stating that he thought the amount Palmer was to pay for Given in Missouri had been paid at that time. In connection, therefore, with the settlement and balance found due, and this recollection of the witness, the possession of the note with the endorsements (the signatures not being questioned), was a circumstance to go to the jury, very slight, it is true, but yet not so wholly irrelevant as to make its admission a cause of reversal.

Finding no error in the record, the judgment is affirmed.